**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━━━

**AUSTIN GURBACKI,**

                              **Plaintiff,**

          **-v-**                                                    **19-cv-01656-JLS(Sr)**

**WALCO ELECTRIC COMPANY, d/b/a WALCO,**
**et al.,**

                              **Defendant.**

━━━━━━━━━━━━━━━━━━━━━━━━━━━

## REPORT, RECOMMENDATION AND ORDER

        This case was referred to the undersigned by the Hon. John L. Sinatra, in

accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon

dispositive motions.  Dkt. #17.


        Plaintiff Austin Gurbacki ("Plaintiff" or "Gurbacki") brought this action in New York

State Supreme Court, Erie County, asserting various product liability claims based on a

workplace accident which caused Gurbacki to suffer extensive injuries to his fingers,

hand, arm, and shoulder.  *See generally* Dkt. #1-1.  Gurbacki alleges that defendants

Walco Electric Company, d/b/a Walco ("Walco Electric"); Walco Manufacturing Corp.,

d/b/a Walco ("Walco Manufacturing"); Fenn LLC d/b/a Fenn Manufacturing, The Fenn

Manufacturing Co., Fenn-Torin, Fenn, and USA.Fenn ("Fenn"); SPX Corporation

("SPX"); Quality Products Inc. ("Quality Products"); Right Lane Capital LLC ("Right

Lane"); United Dominion Industries ("United Dominion"); Ann Arbor Technologies

Corporation ("Ann Arbor"); and Dynics, Inc. ("Dynics") (collectively, "Defendants") played

various roles in the production or sale of the metal rolling mill which caused Gurbacki's injuries.  *See generally id*.

Currently before this Court is Dynics' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Dkt. #52.   For the following reasons, it is recommended that the motion for summary judgment be granted.

## FACTUAL BACKGROUND[1]

Gurbacki alleges that, during October of 2016, he was an employee of Materion Advanced Materials Technologies and Services, Inc. ("Materion").  Dkt. #1-1 ¶ 19.  Gurbacki allegedly worked in a Materion plant operating a device called a "metal rolling mill."  *Id*.  Gurbacki alleges that he was injured while operating the metal rolling mill on or about October 17, 2016, causing substantial injuries to his fingers, hand, arm, and shoulder.  *Id*.

The metal rolling mill utilized several components, one of which was an INX8500 terminal allegedly manufactured by Ann Arbor.  Dkt. #64 ¶¶ 7, 10.  Dynics claims that Ann Arbor sold the INX8500 involved in Gurbacki's accident to Walco Manufacturing sixteen years before his accident.  Dkt. #52-9 ¶ 20.  Walco Manufacturing then

---

[1] The following material facts are taken from Dynic's statement of undisputed facts (Dkt. #52-9), Gurbacki's response to Dynics' statement of undisputed facts (Dkt. #64-7), and these submissions' accompanying exhibits.  Certain background information has been taken from the allegations in the complaint.  Dkt. #1-1.  As required, this Court construes the facts in the light most favorable to the non-moving party.  *See Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).

purportedly sold the device to Williams Advanced Materials ("Williams"), a predecessor of Materion.  *Id*. ¶¶ 18, 20.

After this sale, but still six years before Gurbacki's accident, Dynics purchased most of Ann Arbor's assets in an asset purchase agreement executed in July of 2005 (the "APA").  *Id*. ¶ 1.  Section 1.3 sets out the liabilities that Dynics assumed under the agreement, which includes "[A]ll outstanding warranty claims related to the Business, as more fully described in Schedule 1.3(d)."  *Id*. ¶ 4.  Schedule 1.3(d), titled "Warranty Claims," simply states "[n]one."  *Id*. ¶ 5.  The APA further states that all other liabilities not expressly included in the APA's provisions were not assumed by Dynics.  *Id*. ¶ 6.

After his accident, Gurbacki brought several claims against the various Defendants allegedly involved in the design, testing, inspection, manufacture, distribution, labeling, retailing, sale, and promotion of the metal rolling mill and its component parts, including Dynics.  Dkt. #1-1 ¶ 20.  These claims allege that 1) the Defendants were "careless, negligent and reckless" in their respective involvement with the metal rolling mill and/or its components (the "Negligence Claim"); 2) that the metal rolling mill and/or its component parts were inherently dangerous and defectively designed, manufactured, tested, and/or constructed (the "Product Liability Claim"); 3) that the Defendants breached various implied and/or express warranties regarding the functions of the metal rolling mill and its components (the "Express Warranty Claim" and "Implied Warranty Claim"); and 4) that the Defendants failed to warn Gurbacki of the

dangers associated with the metal rolling mill and/or its components (the "Failure to Warn Claim").  *See generally* Dkt. #1-1.

This Court issued a case management order and the parties began discovery. Dkt. #42.  Before the close of discovery, on December 22, 2021, Dynics moved for summary judgment against all of Gurbacki's claims against it.  Dkt. #52.  Gurbacki submitted his opposing material on June 10, 2022.  Dkt. #64.  This material included an affidavit requesting additional discovery in order to oppose the summary judgment motion, as required by Rule 56(d) of the Federal Rules of Civil Procedure.  *Id*.  Dynics replied on June 24, 2022.  Dkt. #65.

Before this Court now is the motion for summary judgment.  For the reasons set forth below, it is recommended that Dynics' motion for summary judgment be granted.

## DISCUSSION AND ANALYSIS

### I.   Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party . . . ." *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise."  *Bryant*, 923 F.2d at 982 (internal citations omitted).  A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"The Second Circuit has emphasized that it is '[o]nly in the rarest of cases' that summary judgment may be entered against a party who has not been afforded the opportunity to conduct discovery."  *Byrd v. Grove St. Mgmt. Corp.*, No. 6:16-CV-6017(MAT), 2016 WL 6663006, at *2 (W.D.N.Y. Nov. 11, 2016) (quoting *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000)); *Sutera v. Schering*

*Corp.*, 73 F.3d 13, 18 (2d Cir. 1995) (reversing grant of summary judgment where "it [could not] be said that plaintiff had a full and fair opportunity to show that [defendant's] articulated reason for his dismissal was pretextual").  Fed. R. Civ. P. 56(d) allows a party to avoid summary judgment on the grounds that additional discovery is required to adequately oppose the motion.  Fed. R. Civ. P. 56(d).

However, "[a] party opposing summary judgment is not automatically entitled to discovery.  To request discovery under Rule 56[(d)], a party must file an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful."  *Ortiz v. Case*, 782 F. App'x 65, 66 (2d Cir. 2019) (citations and quotations omitted).  Furthermore, "[e]ven where a Rule 56[(d)] motion is properly supported, a district court may refuse to allow additional discovery 'if it deems the request to be based on speculation as to what potentially could be discovered.'"  *Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 117 (2d Cir. 2001) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)).

## II.    Gurbacki's Negligence and Product Liability Claims

Dynics argues that summary judgment should be granted against Gurbacki's Negligence and Product Liability Claims because 1) there is no evidence that Dynics had anything to do with the metal rolling mill involved in Gurbacki's accident, and 2) there is no basis for successor liability against Dynics based on Ann Arbor's alleged

involvement with the metal rolling mill.  *See* Dkt #52-10 at 6-12.  It cannot be reasonably disputed that Dynics had no direct involvement with the metal rolling mill that allegedly injured Gurbacki.  Gubacki has also demonstrated no applicable grounds for imposing successor liability against Dynics based on any potential claim against Ann Arbor.  Accordingly, summary judgment is recommended against the Negligence and Product Liability Claims.

### a.  Direct Involvement

Gurbacki sets forth no evidence indicating Dynics was directly involved with any aspect of the metal rolling mill that allegedly caused his injuries.  Gurbacki admits that the metal rolling mill was sold to his employer by Walco Manufacturing six years before the APA was executed.  *See* Dkt. #52-9 ¶¶ 19, 20; Dkt. #64-7 ¶¶ 19, 20.  It follows that any sale by Ann Arbor to Walco Manufacturing was even earlier than this.  Gurbacki denies that "Dynics did not design, test, manufacture, sell, distribute, retail or promote the metal roller mill or any of its component parts to [his] employer," but offers no evidence or even a theory as to how Dynics could have been directly involved in the sale of the INX8500 years before it purchased any of Ann Arbor's assets.  *See* Dkt. #52-9 ¶ 18; Dkt. #64-7 ¶ 18.  Accordingly, Gurbacki has failed to effectively dispute this issue.  *See Colon*, 58 F.3d at 872 (broad factual allegations are insufficient to defeat summary judgment motion).

Gurbacki also argues under Rule 56(d) that additional discovery is necessary to effectively address this issue, evidenced by a purported inconsistency between Gatt's

affidavit and Dynics' interrogatory responses.  *See* Dkt. #64 ¶ 10.  Relevant here,

Gurbacki points out that Gatt's affidavit claims some INX8500 terminals were sold or

acquired by Dynics after the APA, but Dynics' interrogatory responses state that Dynics

never sold or acquired any INX8500 terminals.  *Id*.

However, a party opposing summary judgment on Rule 56(d) grounds must

demonstrate that the fact it anticipates disputing with more discovery is *material*.  *Ortiz*,

782 F. App'x at 67 (additional discovery under Rule 56(d) is not appropriate where the

Rule 56(d) affidavit "[does] not shown how that fact [that requires additional discovery] is

material").  Gurbacki offers no explanation as to how Dynics' alleged acquisition or sale

of INX8500 terminals years *after* Materion purchased the INX8500 involved in his

accident has any bearing on Dynics' direct involvement with his accident.  Accordingly,

the purported discrepancy between the interrogatory responses and Gatt's testimony is

not material.

### b.  Successor Liability

Dynics also did not inherit any potential liability through the APA as Ann Arbor's

successor.  Generally, "a corporation that purchases the assets of another corporation

is . . .  not liable for the seller's liabilities."  *New York v. Nat'l Serv. Indus.*, 460 F.3d 201,

209 (2d Cir. 2006).  However, "a buyer of a corporation's assets will be liable as its

successor if: '(1) it expressly or impliedly assumed the predecessor's tort liability, (2)

there was a consolidation or merger of seller and purchaser, (3) the purchasing

corporation was a mere continuation of the selling corporation, or (4) the transaction is

entered into fraudulently to escape such obligations.'"  *Id*. (quoting *Schumacher v. Richards Shear Co*., 59 N.Y.2d 239, 244 (1983)).  "The party alleging successor liability 'has the burden of proving facts which bring the case within one of the[] exceptions.'" *Silverman Partners LP v. Verox Grp*., No. 08 CIV 3103 (HB), 2010 WL 2899438, at *3 (S.D.N.Y. July 19, 2010) (quoting *Desclafani v. Pave–Mark Corp*., No. 07 Civ. 4639(HBP), 2008 WL 3914881, at *3 (S.D.N.Y.2008).

Gurbacki purports to invoke three of these exceptions, arguing that 1) the APA was a de facto merger, and therefore meets the merger exception noted in *Schumacher*, 2) Dynics is a mere continuation of Ann Arbor, and 3) Dynics impliedly assumed Ann Arbor's tort liabilities.  Dkt. #64-6 at 9, 10.  However, none of these exceptions are applicable here.

## 1.  De Facto Merger Exception

First, the APA was not a de facto merger.  Generally, whether an asset purchase agreement is actually a de facto merger depends on several factors, including "(1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets, and general business operation."  *Nat'l Serv. Indus*., 460 F.3d at 209.  However, the Second Circuit, applying New York law to successor liability on tort claims, has found that continuity of ownership between the two entities is a necessary element, not

a mere factor.  *See id*. at 212 ("[B]ecause continuity of ownership is the essence of a

merger, a de facto merger will not be found in the absence of this element."); *Audio*

*Emotion S/A v. McIntosh Grp., Inc.*, 707 F. App'x 729, 731 (2d Cir. 2017) ("We have

recognized that the doctrine cannot apply absent continuity of ownership, which is the

essence of a merger.") (quotations omitted).[2]


Here, it cannot be reasonably disputed that there was no continuity of ownership

between Ann Arbor and Dynics.  Gatt, the president of Dynics when the APA was

executed, affirms that the APA's terms involved no exchange of ownership interest in

Dynics, and that there was no continuity of ownership through any other channels.  *See*

Dkt. #52-9 ¶ 30; Dkt. #52-8 ¶¶ 10, 21.  Gurbacki denies this in his opposition to Dynics'

statement of material facts, but offers no basis for the denial and presents no evidence

indicating any owners of Ann Arbor achieved ownership interests in Dynics besides a

press release mentioning two board seats purportedly conferred to Ann Arbor principles.

*See generally* Dkt. #64-6 at 12-14; Dkt. #64-4.  However, this press release predates

the execution of the APA, and therefore provides no evidence that these seats were

actually conveyed in the deal.  *See* Dkt. #52-8 ¶ 10 (admitting that conveyance of board

---

[2] Contrarily, Gurbacki argues that New York courts actually treat continuity of ownership as a mere factor in assessing whether a transaction is a de facto merger.  Dkt. #64-6 at 12 (citing *Fitzgerald v. Fahnestock & Co*., 286 A.D.2d 573, 574-75 (1st Dep't 2001) (stating that "[n]ot all of [the de facto merger factors] are necessary to find a de facto merger")).  However, the Second Circuit expressly considered and rejected *Fitzgerald* when it first held that continuity of ownership was a necessary element of a de facto merger.  *See Nat'l Serv. Indus*., 460 F.3d at 213 ("Although some cases have cited *Sweatland* for the proposition that all four factors need not be present to establish a de facto merger, *see, e.g*., . . . *Fitzgerald*, [86 A.D.2d 573, 574-75], no New York court has applied it to hold explicitly that a de facto merger may be found in the absence of evidence of continuity of ownership.").

seats was considered before the APA was executed, but not ultimately agreed to).  A provision in the APA, an affidavit by an executive, or any evidence of an actual agreement conferring the board seats may have created a reasonable dispute of fact on this issue.  However, the press release alone cannot carry Gurbacki's burden.  *See Silverman Partners*, 2010 WL 2899438, at *3 (party alleging successor liability has the burden of proving one of the exceptions).

Gurbacki argues in his Rule 56(d) affidavit that a deposition of Gatt is necessary to further investigate facts relating to whether the APA was a de facto merger.  *See* Dkt. #64 ¶¶ 7, 10, 11.  Gurbacki claims that Gatt must be deposed to further investigate the characterization of the APA, evidenced the press release referring to the deal as a "merger" and mentioning the two board seats discussed above.  *See* Dkt. 64-4. However, the press release's characterization of the APA as a merger has no bearing on the continuity of ownership between Ann Arbor and Dynics.  While the statement regarding the board seats is at least relevant to the issue of continuity, Gurbacki does not articulate in his Rule 56(d) affidavit what specific information a deposition of Gatt would reveal about this issue that Gatt has not already testified to in his affidavit.  *See Labombard v. Winterbottom*, No. 8:14-cv-00071 (MAD/CFH), 2015 WL 6801206, at *7 (N.D.N.Y. Nov. 6, 2015) ("Plaintiff makes no argument that Defendants' proof on these issues is insufficient.  While he states that he intends to depose Ms. Winterbottom and Mr. Anslow, Plaintiff provides no explanation of what specific facts he expects to discover nor how those facts are reasonably expected to create a genuine issue of material fact[.]") (quotations omitted).  Therefore, because Gurbacki has not

demonstrated what he expects to find through depositing Gatt, and the press release alone is insufficient to carry his burden, the de facto merger doctrine does not apply here and further discovery is not justified under Rule 56(d).

### 2.  Mere Continuation Exception

Gurbacki's second argument, that Dynics is excused from the general bar on successor liability because it is a mere continuation of Ann Arbor, fails for the same reasons.  Dynics argues that these grounds for successor liability are barred by Ann Arbor's continued existence after the APA.  Dkt. 52-10 at 7-9; Dkt. 52-8 ¶ 11 (stating that Ann Arbor continued to exist for three more years "for the purpose, among other things, of allowing Dynics time to pay its 60-month promissory note for purchase of assets under the [APA] and allow Ann Arbor to pay and discharge all the obligations and liabilities of the business").  In opposition, Gurbacki argues that Ann Arbor only existed to allow for the payment of the APA's promissory note, and therefore did not functionally continue to operate after the APA.  Dkt. #64-6 at 11, 12.


It is unclear what kind of operations may continue in the wake of an asset purchase before the mere continuation exception becomes barred as a matter of law. The continuation of a predecessor's normal operations certainly bars this exception. *See Audio Emotion S/A v. McIntosh Grp., Inc.*, 707 F. App'x 729, 732 (2d Cir. 2017) (finding that an asset purchase was not the mere continuation of a predecessor entity because "New York courts routinely hold that the continued existence of the predecessor entity is a bar to a mere continuation claim."); *Douglas v. Stamco*, 363 F.

App'x 100, 102 (2d Cir. 2010) ("[T]o the extent that the mere continuation exception is considered distinct from the de facto merger exception, it also appears that the predecessor entity . . . survived the asset sale as a bankrupt entity, which renders the mere continuation exception unavailable . . . .") (summary order).

Some courts within the Second Circuit have applied this rule rigidly, barring the continuation exception even when the surviving predecessor exists only as "a mere shell." *Cargo Partner AG v. Albatrans Inc.*, 207 F. Supp. 2d 86, 95 n.10 (S.D.N.Y. 2001) ("An allegation that the seller has become a mere shell is not sufficient" to establish the mere continuation exception); *see also Schumacher*, 59 N.Y.2d at 245 (refusing to apply mere continuation exception where predecessor remained as "a distinct, albeit meager, entity" after asset purchase).  Other courts, however, have held that the continued existence of the predecessor is "not dispositive of a mere continuation claim," considering a multitude of other factors when assessing the continuity of the predecessor entity.  *Martin Hilti Family v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319, 352 (S.D.N.Y. 2019) (collecting cases allowing successor liability claims to continue based on mere continuation exception where the predecessor entity existed in a limited capacity after the asset purchase).

Here, it is not necessary to determine whether Ann Arbor's three-year, limited purpose existence after the APA bars the mere continuation exception because the exception does not apply irrespective of its continued operations.  Generally, "the de facto merger and mere continuation exceptions--though routinely listed separately, are

often regarded as so similar as to be considered a single exception." *Douglas*, 363 F.

App'x 102 (citing *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 n.3 (2d Cir.

2003)).  And, as was the case with the de facto merger exception, "[w]ithout continuity

of stock, shareholders, or directors, the mere continuation exception will not apply."

*Randle v. AC Asset Servs. LLC*, 19-CV-01074-LJV, 2022 WL 2680079, at *3 (W.D.N.Y.

July 12, 2022).


As discussed above, Dynics offers evidence that no ownership interests were

exchanged between the two companies.  *See* Dkt. #52-9 ¶ 30; Dkt. #52-8 ¶¶ 10, 21.

And again, Gurbacki fails to submit any evidence of stock, shareholder, or director

continuity, besides a single press release mentioning two board seats for Ann Arbor

principles that predates the APA.  *See generally* Dkt. #64-6 at 12-14; Dkt. #64-4.

Considering the absence of any direct evidence that these board seats were actually

conferred, such as provisions of the APA, an affidavit of an executive, or the agreement

conferring the board seats, this press release alone is insufficient to carry Gurbacki's

burden.  *See Silverman Partners*, 2010 WL 2899438, at *3 (party alleging successor

liability has the burden of proving an exception).  Additional Rule 56(d) discovery is also

not justified because of the failure to identify any specific, relevant information that a

deposition of Gatt would uncover.  *See Labombard*, 2015 WL 6801206, at *7 (Rule

56(d) additional deposition not justified without specifically describing material

information sought).  Gurbacki only points generally to the supposed inconsistency

between the press release and Gatt's characterization of the APA, he does not discuss

what specific information a deposition would produce that Gatt has not already testified

to.  Accordingly, additional discovery is not justified under Rule 56(d).

### 3.  Express or Implied Assumption of Liabilities Exception

Lastly, Gurbacki's argument that the APA impliedly transferred Ann Arbor's tort

liabilities to Dynics also fails.  There is a presumption that the purchasing entity in an

asset purchase agreement does not inherit the selling entity's liabilities.  *See Vasquez*

*v. Ranieri Cheese Corp*., No. 07-CV-464-ENV-VVP, 2010 WL 1223606, at *11

(E.D.N.Y. Mar. 26, 2010) ("[T]here is a presumption that a corporation that purchases

the assets of another corporation is generally not liable for the selling corporation's

liabilities) (citing *Nat'l Serv. Indus*., 460 F.3d at 209)).  Furthermore, when an asset

purchase agreement includes language specifically stating that unspecified liabilities are

not being purchased, courts do not interpret these agreements as impliedly assuming

any tort liabilities not expressly included in the agreement.  *See Beck v. Roper Whitney,*

*Inc.*, 190 F. Supp. 2d 524, 534 (W.D.N.Y. 2001) (assessing agreement that waived

"[a]ny and all liabilities or obligations of Seller (not specifically assumed)," finding that

"[t]his express disclaimer of liability warrants a finding that the first exception for finding

successor liability does not apply . . . ."); *Peralta v. WHM Tool Grp., Inc*., No. CV 04

3826 CPS, 2005 WL 2002454, at *3 (E.D.N.Y. Aug. 19, 2005) ("With respect to the first

exception, defendant cannot be held to have expressly or impliedly assumed the

predecessor's tort liability as to products sold prior to the asset purchase since it

specifically disavowed such liability in the Asset Purchase Agreement."); *Desclafani*,

2008 WL 3914881, at *4 ("Plaintiff first argues that in the APA Stimsonite implicitly

assumed Pave-Mark's liabilities with respect to claims arising from the use of the kettle

at issue.  This argument is frivolous since Stimsonite expressly did not assume and

Pave-Mark expressly retained such liability under the APA . . . .").

Here, the APA expressly enumerates the only liabilities that Dynics assumed,

and states that all other liabilities remained with Ann Arbor.  *See* Dkt. #52-9 ¶¶ 4-8.

While Gurbacki denies this assertion in his opposition to Dynics' statement of material

facts, he offers no basis for denying the express language of the APA, merely stating

that "[Dynics] impliedly assumed several liabilities" and that the deposition of Gatt is

necessary to oppose the motion.  *See* Dkt. #64-7 ¶¶ 4-8.  These conclusory allegations

are insufficient to carry his burden of establishing successor liability.  *See Silverman*

*Partners*, 2010 WL 2899438, at *3 (party alleging successor liability has the burden of

proving one of the exceptions); *Vasquez*, 2010 WL 1223606, at *11 (presumption that

purchasing corporation does not assume any liabilities).  It would be improper to infer

that any liabilities were assumed without any actual support on the record.  *See*

*Vasquez*, 2010 WL 1223606, at *11 ("But, even the assumption of responsibility for

some obligations of a predecessor corporation hardly requires that a court infer from an

otherwise silent record that it had assumed all existing liabilities and obligations - known

and unknown, across the board.").

Accordingly, Dynics has not expressly or impliedly assumed any tort liability

under the APA.  Gurbacki has also failed to articulate any facts indicating additional

discovery on this issue is justified.  *See* Dkt. 64 ¶¶ 9-11 (not referencing any issues

relating to the express waiver of liabilities in the APA); *Labombard*, 2015 WL 6801206, at *7 (deposition testimony requested under Rule 56(d) not appropriate without identification of specific material facts being sought).

Therefore, because Gurbacki has not demonstrated any grounds for imposing successor liability, summary judgment is recommended against his Negligence and Product Liability Claims.

### III.    Gurbacki's Implied and Express Warranty Claims

Dynics argues that Gurbacki's Express Warranty Claim fails because Dynics never made any warranties about the INX8500, it did not assume any warranty claims from Ann Arbor relating to the INX8500, and the statute of limitations has run on any claims Gurbacki may have had.  *See* Dkt. #52-10 at 13, 14.  Gurbacki does not expressly oppose these arguments in his opposition.  *See generally* Dkt. #64-6.  Dynics' three arguments each provide grounds for summary judgment against Gurbacki's Express Warranty Claims.

First, there is no evidence in the record that Dynics made any affirmation of fact to Gurbacki that was relied on.  "To prevail on a claim of breach of express warranty, a plaintiff must show an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon." *Factory Assocs. & Exps., Inc. v. Lehigh Safety Shoes Co. LLC*, 382 F. App'x 110, 111-12 (2d Cir. 2010) (internal quotations omitted).  As discussed above, Gurbacki admits

that the metal rolling mill was sold to his employer six years before the APA was executed.  *See* Dkt. #52-9 ¶¶ 19, 20; Dkt. #64-7 ¶¶ 19, 20.  Although Gurbacki denies that "Dynics did not design, test, manufacture, sell, distribute, retail or promote the metal roller mill or any of its component parts to [his] employer," he fails to allege any facts regarding any affirmations that Dynics made to anyone regarding the INX8500.  *See* Dkt. #52-9 ¶ 18; Dkt. #64-7 ¶ 18.  Accordingly, Gurbacki has failed to effectively dispute that there was no affirmation of fact that he relied upon.  *See Colon*, 58 F.3d at 872 (broad factual allegations are insufficient to defeat summary judgment motion).

Second, Dynics did not assume any warranty claims under the APA.  Excerpts from the APA indicate that Dynics agreed to assume the warranty claims enumerated in Schedule 1.3(d).  *See* Dkt. #52-9 ¶ 7.  This schedule contained no warranty claims.  *Id.* ¶ 8.  Gurbacki fails to set forth any evidence indicating Schedule 1.3(d), or any other portion of the APA, included terms encompassing the warranty claim at issue in this case by failing to even address the express warranty arguments in his opposition. Accordingly, the lack of any assumed warranty claims under the APA's terms provide grounds for summary judgment on the Express Warranty Claims.

And third, the Express Warranty Claim is barred by the statute of limitations.  The statute of limitations for a breach of express warranty claim is four years.  *Tinnell v. Invacare Corp.*, 819 F. Supp. 2d 192, 199 (W.D.N.Y. 2011).  "A claim for breach of express or implied warranty accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of such breach.  Further, [a] breach of warranty

occurs when tender of delivery is made." *Id.* (quotations and citations omitted).  Dynics states that the INX8500 was sold to Gurbacki's employer six years before the APA and sixteen years before Gurbacki's alleged accident.  Dkt. #52-9 ¶ 19.  Gurbacki admits these facts, Dkt. #64-7 ¶ 19, and fails to articulate any reason for tolling the statute of limitations or any other grounds for opposing this argument, *see generally* Dkt. #64-6. Accordingly, any express warranty claim accrued before the APA and Gurbacki's accident.

Gurbacki fails to set forth how additional discovery is necessary to develop any facts relevant to any of these three grounds for summary judgment.  *See* Dkt. 64 ¶¶ 9-11 (not referencing any issues relevant to the statute of limitations failure, the APA's provisions declining to assume any warranty claims, or that any affirmations of fact were made in connection with the INX8500 sale); *Labombard*, 2015 WL 6801206, at *7 (deposition testimony requested under Rule 56(d) not appropriate without identification of specific material facts being sought).  Gurbacki also fails to set forth any opposition to these arguments in his other opposition filings besides general conclusory denials.  *See Ortiz*, 782 F. App'x at 67 (general denials insufficient to withstand summary judgment). Accordingly, summary judgment is recommended against Gurbacki's Express Warranty Claims based on these grounds.

Dynics next argues that the Implied Warranty Claim fails for the same reasons that there is no successor liability.  *See* Dkt #52-10 at 14, 15.  Again, Gurbacki offers no evidence supporting his Implied Warranty Claim besides stating in conclusory fashion

that "[Dynics] impliedly assumed several liabilities" in connection to the APA.  *See* Dkt. #64-7 ¶ 4.

Generally, implied warranty claims against a successor corporation hinge on establishing successor liability with the defendant.  *See Muratovic v. Mkt. Sols. Grp., Inc.*, No. 21-CV-562 (NGG) (TAM), 2023 WL 2683044, at *4 (E.D.N.Y. Mar. 29, 2023) (applying New York law to implied warranty claim, stating that "the causes of action regarding breach of implied warranty must be brought against the contracting party that sold the product.  Muratovic implicitly concedes, though, that Zavor was not the entity that manufactured the pressure cooker that injured her, nor the entity that sold it, arguing instead that Zavor inherited the relevant liabilities from Fagor America, its alleged predecessor.  As a result, all of Muratovic's claims rest on whether the allegations support the application of successor liability"); *see also Colon v. Multi-Pak Corp.*, 477 F. Supp. 2d 620, 625 (S.D.N.Y. 2007) (granting summary judgment against implied warranty claim, among others, after finding no successor liability); *Deluca v. Portland Orthopaedics Ltd.*, 2:15-cv-05562 (ADS)(AKT), 2017 WL 6001781, at *1 (E.D.N.Y. Dec. 2, 2017) (same).

As discussed above, there are no grounds for imposing successor liability on Dynics, and Gurbacki has not demonstrated grounds for additional discovery under Rule 56(d).  *See supra* Section II.  Accordingly, summary judgment is recommended against the Implied Warranty Claim.

IV.     **Gurbacki's Failure to Warn Claim**

Dynics argues that Gurbacki's Failure to Warn Claim fails because it had no duty

to warn Ann Arbor's former business partner of any potential dangers or defects in the

INX8500.  *See* Dkt #52-10 at 15, 16.  Again, Gurbacki does not directly address this

argument in his opposition.  *See generally* Dkt. #64-6.  He also fails to articulate how

further discovery would establish a duty to warn.  *See generally* Dkt. #64 (Rule 56(d)

affidavit failing to discuss failure to warn claim or any facts regarding a special

relationship between Gurbacki or his employer and Dynics).


"A corporation that is a successor to an original manufacturer will have an

independent duty to warn purchasers of a product manufactured by the corporation's

predecessor where there is a 'special relationship' between the successor and the

purchaser."  *Vicuna v. O.P. Schuman & Sons, Inc.*, 298 F. Supp. 3d 419, 436 (E.D.N.Y.

2017) (quoting *Sullivan v. Joy Mfg. Co.*, 70 N.Y.2d 806, 808 (1987)).  Courts consider

several factors in determining whether a special relationship exists, including

"succession to a predecessor's service contracts, coverage of the particular machine

under a service contract, service of that machine by the purchaser corporation, and a

purchaser corporation's knowledge of defects and of the location or owner of that

machine."  *Peralta*, 2005 WL 2002454, at *5 (quoting *Schumacher*, 59 N.Y.2d at 247).

Generally, the issue of whether a special relationship is present "is one of fact reserved

for the jury."  *Vicuna*, 298 F. Supp. 3d at 437 (quoting *Schumacher*, 59 N.Y.2d at 248-

49).  However, when there is no contact between the successor and the purchaser on

record, summary judgment on failure to warn claims is appropriate.  *Peralta*, 2005 WL

2002454, at *5 ("In this case, there is no evidence that WMH had any relationship with the plaintiff or his employer . . . .  Thus, WMH cannot be held liable for a failure to warn.").

Here, none of the *Schumacher* factors are present.  Dynics states that it had no contact with Gurbacki's employer or its predecessors regarding the INX8500 sale or its service.  Dkt. #52-9 ¶ 37.  Gurbacki denies this, Dkt. #64-7 ¶ 37, but offers no evidence indicating there was any contact between Dynics and Materion or Williams, let alone sufficient contact to constitute a special relationship under *Schumacher*.  *See Peralta*, 2005 WL 2002454, at *5 (granting summary judgment based on absence of evidence of special relationship by plaintiff).  Gurbacki also states that it is necessary to depose Gatt in order to adequately oppose summary judgment on this issue, but points to no specific evidence he expects to uncover in his Rule 56(d) affidavit relating to the relationship between Dynics and Materion or Williams.  *See* Dkt. #64 ¶¶ 9-11.  Accordingly, based on the Gatt affidavit, Gurbacki's complete absence of evidence, and Gurbacki's lack of opposition to this argument in his opposing memorandum, summary judgment on the Failure to Warn Claim is appropriate.

## CONCLUSION

For the foregoing reasons, it is recommended that Dynics' motion for summary judgment (Dkt. #52) be GRANTED.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:**      **Buffalo, New York**
           **April 14, 2023**

                                                    _**S/ H. Kenneth Schroeder, Jr.**_
                                                    **H. KENNETH SCHROEDER, JR.**
                                                    **United States Magistrate Judge**